E. W. ALBERTSON, Appellee, v. D. W. LEWIS, Appellant.

**Malpractice:** DAMAGES: EVIDENCE.   Evidence of the value of a
1   physician's services, in performing a future operation to reset
a fractured bone, is not admissible under a petition in an action
for malpractice presenting a case of permanent injury and for
the allowance of damages on that theory.

**Same:** INSTRUCTION.   Where the petition in an action for malprac-
2   tice contemplates a recovery of damages for a permanent in-
jury, and there is no evidence that a future operation is con-
templated by plaintiff, an instruction authorizing recovery of
the reasonable expenses of another operation is erroneous.

**Same.** In an action for malpractice an instruction authorizing re-
3   covery for injury to plaintiff's general health in addition to the
particular injury sustained, of which there was neither plead-
ing nor proof, was erroneous.

**Same:** PAIN AND SUFFERING.   Where there is no evidence, in an ac-
4   tion for malpractice, connecting plaintiff's physical pain and
suffering with the physician's negligent act, an instruction per-
mitting a recovery of damages on account of the alleged neg-
ligence is erroneous.

*Appeal from Lyon District Court.*— HON. WM. HUTCHIN-
SON, Judge.

FRIDAY, NOVEMBER 16, 1906.

ACTION at law to recover damages arising as alleged out of the negligent failure of defendant, a physician and surgeon, to properly treat an accidental fracture of the bone of plaintiff's arm. From a verdict and judgment in favor of plaintiff, the defendant appeals.— *Reversed.*

*E. C. Roach,* for appellant.

No appearance for appellee.

BISHOP, J.— The fracture sustained by plaintiff was of the bone of his arm between the elbow and shoulder, and occurred on December 5, 1903. It is the allegation of the petition that defendant, through want of skill, negligently set and treated plaintiff's arm so that it became crooked and has a large hump thereon, and is useless to plaintiff; that the disfigurement so caused is permanent in its nature. As related to the subject of damage, pain and suffering, mental and physical, and past and future, is alleged; also loss of time and diminished earning capacity. That the fracture of the bone of plaintiff's arm was properly reduced in the first instance is not disputed in the evidence. Nor is it disputed but that down to February 25th, following, at least, the subsequent treatment administered by defendant was proper in all respects. Plaintiff testified that, on the date last mentioned, defendant took off the zinc cast in which the arm had previously been encased, and put on in place thereof a simple gauze bandage; that he then gave instructions to plaintiff to use the arm, saying that it would gradually grow stronger. In respect to the appearance of the arm at that time plaintiff says that it was not crooked as far as he could tell from the looks. He further says that he wore the bandage so put on some three or four weeks,

when he took it off; that the arm " was then as crooked as it is now." Defendant, on the other hand, testified that he saw plaintiff last on January 15, at which time he examined the arm and found the fractured ends of the bone in proper apposition; that he continued the arm in the zinc cast, and that plaintiff did not thereafter return for further examination or treatment as he was requested to do. The several surgeons called as witnesses on the trial agreed that an examination of plaintiff's arm disclosed a case of what is termed delayed union; that is, a failure of the fractured ends of the bone to reunite or grow together within the time usual to a perfect union. And further, that the angular deformity in the arm was caused by the fact that the broken ends of the bone were not in perfect apposition. As to the failure of the bone to reunite, it is agreed that such was due to conditions inhering in the patient himself, and not to any improper treatment on the part of the surgeon. That the imperfect apposition was due to the absence of an immovable dressing such as to secure immobilization, and the use of his arm by plaintiff, seems to be conceded; the surgeons were not, however, directly interrogated on the point.

The foregoing statement is sufficient to an understanding of the errors assigned and relied upon for a reversal. It will be apparent therefrom that negligence on the part of defendant, if any such there was, could only be predicated on a finding of the truth of plaintiff's contention to the effect that on February 25th, a gauze bandage was substituted for the zinc cast, and that he was then directed to make use of his arm. Doctor Cram, a witness for plaintiff testified that, in his judgment, an operation on plaintiff's arm called " resection " would be necessary if any better result than plaintiff now had was to be expected. Over the objections of defendant, he was then permitted to testify as to the reasonable value of a surgeon's services in performing an operation of resection. Here was error. And if there were

1. MALPRACTICE: damages: evidence.

no other reasons, the error becomes apparent when it is observed that the petition contains no allegation that, as a result of defendant's negligence, the condition of plaintiff's arm is such that a future operation is or will become necessary, and that plaintiff will be put to expense on account thereof. Quite to the contrary the petition presents the case of a fixed and permanent injury, and the demand for damages is grounded wholly on that theory. This being the state of the record, we need not determine whether the expense incident to medical and surgical attendance should be classed as general or as special damage — a point on which there is more or less of a conflict in the authorities. 13 Cyc. 183. It is sufficient to say that in any view the defendant was not called upon to defend as against a claim of future damage — to accrue, if at all, as plaintiff might elect — growing out of a matter respecting which, if the petition speaks at all on the subject, the averment is that such an operation, and hence the attending expense, would be unavailing to afford relief and therefore useless.

Following the reasoning of the foregoing paragraph it must be said that the court erred in charging the jury that, in fixing the amount of plaintiff's damage, if he was found

2. SAME: instruction.

entitled to recover, they might take into consideration " the reasonable and necessary expense for another operation or an operation on the arm in question," etc. In addition to what is said in the preceding paragraph it may be further said that it was not made to appear that an operation in the future was within the contemplation of plaintiff. The evidence having any relation to that subject was confined to the expression of opinions on the part of the surgeons testifying as to the probable outcome of an operation should one be had, and further, that they had recommended the operation of resection as proper to be resorted to. That it is error to instruct on matters not within the issues, and in respect of which there has been no attempt to make proof, is fundamental doctrine. More-

over, as the case was submitted to the jury, they were authorized to find damages as for a permanent injury, and also damages as for the expense incident to a possible attempt to remove the permanency of the disability and restore the arm to normal conditions.

Appellant also complains that in the charge the jury was told that, in fixing the amount of plaintiff's damages, they might take into consideration the impairment of his health in addition to the injury sustained by him to his arm and his loss of ability to work and labor. Here, also, was matter wholly foreign to the pleadings and proof, and hence error. It had not even been suggested on the trial that plaintiff had suffered any injury or damage to his general health by reason of the negligent act of defendant complained of.

**3. Same.**

Further, error is assigned for that the court submitted to the jury as an element of damage the " pain and suffering actually endured by him and such as it is reasonably apparent he will endure in the future, so far as the same is shown to have been caused by the alleged negligence complained of." On the subject of his physical pain the evidence for plaintiff is confined to this simple statement: " When I work hard the arm pains me slightly at times. I do not experience any serious pain." There is nothing in the record to warrant a conclusion that such pain as he did suffer was attributable in any degree to the fact that, in growing together, the broken parts of the bone were not in perfect apposition to each other. And the imperfect apposition is the only matter appearing upon which the charge of negligence could be sustained. As the matter of a possible future operation was not in the case, the pain and suffering that might be incident thereto could not, of course, be considered. There being no ground upon which to base a recovery as for physical pain, such should not have been submitted for the consideration of the jury, and the submission thereof by the court was error.

**4. Same: pain and suffering.**

Other errors are presented in argument, but we need not discuss them. They are either without merit, or are such as will not likely arise upon a further trial. We conclude that a new trial must be, and it is, ordered. *Reversed.*